# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **VALU MERCHANDISERS COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. <u>**4:05-cv-00250-HFS**</u> |
| ) | |
| **WORLD FINER FOODS, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## VERIFIED COMPLAINT

Valu Merchandisers Company ("VMC") for its Complaint against World Finer Foods, Inc. ("WFF") states and alleges as follows:

## THE PARTIES

1. VMC is engaged generally in the business of providing its retail customers with quality merchandise at the lowest possible price, and it provides merchandising and promotional programs to sell products at retail.

2. WFF is engaged generally in the business of servicing, selling, marketing and distributing over 900 specialty foods products. The products are sold to a comprehensive network of Specialty Food Distributors who service supermarket retailers nationwide.

## JURISDICTION AND VENUE

3. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 2 of this Complaint as if fully set forth herein.

4. VMC is a Kansas corporation doing business at 624 Westport Road, Kansas City, Missouri 64111.

5. WFF is a Delaware corporation doing business at 300 Broadacres Drive, Bloomfield, New Jersey, 07003.

6. The matter in controversy involves both a federal question in that plaintiff's claims include violations of the Sherman Act and it exceeds the sum of $75,000 exclusive of interest and costs.

7. The Court has original jurisdiction over this action pursuant to both 28 U.S.C. § 1331 and § 1332.

8. At all times relevant to this pleading, WFF entered into contracts with VMC in the State of Missouri.

9. WFF conducts and transacts business in the State of Missouri, including business relating to this lawsuit and, therefore, is subject to the personal jurisdiction of this Court.

10. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events, omissions or concealments giving rise to the claims, occurred in this jurisdictional district.

## GENERAL ALLEGATIONS

**A.    The Parties' Relationship**

11. Specialty foods distributors are companies that distribute gourmet, natural, organic and/or specialty foods to grocers, restaurants and other commercial businesses.

12. VMC entered into the specialty foods market in approximately August of 2003.

13. For over 50 years, WFF has been in the specialty foods business in general and has been sourcing specialty foods to distributors such as VMC, in particular.

14. Upon information and belief, WFF controls approximately 65-75% of the market of distributing specialty food items of the type carried by WFF to resalers such as VMC.

15. For the past fourteen months, VMC has been paying the same costs as other WFF customers. WFF was offering to VMC best costs and rebate monies.

16. WFF is currently VMC's biggest supplier in specialty foods, and VMC is buying nearly every item WFF offers to them.

### B. The Kansas City, Missouri Trade Show

17. On February 16 and 17, 2005, VMC conducted a retailer trade show at the Hyatt hotel in Kansas City, Missouri.

18. Throughout the trade show, WFF had at least two representatives present to assist VMC in making forward sales of WFF's specialty food items to its customers.

19. During the Kansas City trade show, and based upon special inventories made available by WFF to induce VMC's retail customers to place orders for WFF products, various customers operating 110 retail grocery stores placed over 100 orders for forty-four different specialty food items exclusively distributed by WFF. The ship date for the orders extends from April 2005 to October 2005.

20. WFF agreed to supply all of the specialty food items ordered from VMC by VMC's customers during the trade show.

### C. New Requirements

21. Upon information and belief, one or more than one of VMC's competitors complained to WFF that VMC was not complying with WFF's price requirements.

22. As a result of complaints to WFF from VMC's competitors, WFF approached VMC regarding pricing.

23. On February 25, 2005, Frank Muchel of WFF contacted Mike Jones of VMC to tell him that VMC did not meet WFF's criteria for best cost because VMC's published sales price did not reflect a markup for service in VMC's selling price.

24. Jones explained to Muchel that VMC offered service work as an "add-on" cost that was not reflected in VMC's published sell price.

25. Muchel told Jones that service work, as a matter of policy, is required in order to get the best cost of goods. Muchel directed that VMC needed to either (i) build in a percentage for service, (ii) move to a 15% higher cost of product from WFF or (iii) part ways.

26. Muchel and Jones agreed to set up a telephone conference with VMC's President, Ken Nemeth, to discuss the servicing issue in greater detail.

27. On February 28, 2005, in preparation for his upcoming meeting with Muchel, Jones asked Muchel to provide answers to the following questions:

   a. What are the necessary components of full service so VMC could be in compliance with WFF's requirements;

   b. How does WFF propose that VMC monitor and measure the service; and

   c. What provisions are made when a customer does not want a full service program?

28. Instead of answering VMC's questions, Muchel telephoned Ken Nemeth directly and informed VMC that WFF would <u>not only</u> no longer do business with VMC but that it would not fulfill any of the remaining orders that were booked during the Kansas City trade show.

29. VMC attempted to get WFF to reverse its position, but WFF refused.

30. WFF has not fulfilled VMC's purchase orders for products that were ordered before the trade show and during the trade show.

31. Other distributors similar to VMC have agreed to price products purchased from WFF in a manner consistent with WFF's demands concerning pricing or price levels.

32. WFF's conduct with VMC and other distributors demonstrates that WFF is setting prices for what the distributors can charge.

## COUNT I – SHERMAN § 1 RESALE PRICE MAINTENANCE

33. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. WFF engaged in resale price fixing when it instructed VMC to make service work a mandatory part of its pricing of WFF products, or alternatively, move to a higher cost from WFF.

35. WFF has required other distributors to make service work a mandatory part of their pricing of WFF product.

36. Other distributors of WFF products have made service work a mandatory part of their pricing of WFF product because of WFF's demands.

37. WFF terminated and/or refused to deal with VMC because of a resale price-fixing conspiracy.

38. The effect of the foregoing is that WFF fixed and increased resale prices.

39. WFF's conduct occurred in or affected interstate commerce; and

40. VMC was injured in its business or property because of the resale price fixing agreement.

WHEREFORE, VMC prays for judgment in an amount to be determined, those damages to be trebled, plus interest and any other relief the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

41. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. The various agreements between VMC and WFF, including the sales order made during the February 16 – 17 trade show constitute a mutual agreement between VMC and WFF.

43. The aforesaid agreements created mutual obligations between VMC and WFF, including but not limited to, an agreement by VMC to purchase product from WFF for resale to VMC's customers, and an agreement by WFF to provide such product to VMC to cover VMC's various sales to VMC's customers.

44. The agreements are supported by valid and mutual consideration.

45. VMC performed its obligations under the agreements by ordering and paying for the product or standing ready to pay for the product.

WHEREFORE, VMC prays for judgment in an amount to be determined, plus interest and any other relief the Court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE

46. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. VMC has a contract or valid business expectancy with the buyers that placed orders with it at VMC's February trade show.

48. WFF has knowledge of the contracts and business expectancies that VMC and VMC's customers developed during the February trade show because WFF (i) was present throughout the show and (ii) agreed to supply all of the products ordered by VMC for resale to VMC's customers.

49. WFF has intentionally interfered with the contract and/or business expectancy between VMC and VMC's customers by WFF's wrongful cancellation and termination of WFF's agreement to supply specialty food products to VMC.

50. WFF's conduct will necessarily cause VMC to breach its agreements with the underlying purchasers and/or WFF's conduct will cause VMC to lose its expectancy with those purchasers.

51. WFF's conduct is absent of any justification.

52. Because of WFF's conduct, VMC has been damaged.

WHEREFORE, VMC prays for judgment in an amount to be determined, those damages to be trebled, plus interest and any other relief the Court deems just and proper.

## COUNT IV – FRAUD

53. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. WFF made a fraudulent misrepresentation of fact or intention when it informed VMC that it would fulfill the orders VMC placed during the February trade show.

55. WFF knew or should have known at the time that it made those representations that it would not fulfill the trade show orders.

56. WFF made those misrepresentations of fact or intention with the purpose or expectation of inducing VMC to act either (i) by placing orders with WFF that it otherwise would not have placed or (ii) by agreeing to WFF's demands regarding price requirements after VMC had made commitments to VMC's customers.

57. VMC justifiably relied on WFF's misrepresentation.

58. VMC was damaged by WFF's misrepresentation.

WHEREFORE, VMC prays for judgment in an amount to be determined, those damages to be trebled, plus interest and any other relief the Court deems just and proper.

## COUNT V – NEGLIGENT MISREPRESENTATION

59. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. WFF made a negligent misrepresentation of fact or intention when it informed VMC that it would fulfill the orders VMC placed during the February trade show in that WFF knew or should have known that its representation or intention was false.

61. WFF should have known that at the time it made those representations that it would not fulfill the trade show orders.

62. WFF made the misrepresentations of fact or intention with the purpose or expectation of inducing VMC to act either (i) by placing orders through WFF that it would not have placed, or (ii) by agreeing to WFF's demands regarding price requirements after VMC had made commitments to VMC's customers.

63. VMC justifiably relied upon WFF's negligent misrepresentation.

64. VMC was damaged by WFF's negligent misrepresentation.

WHEREFORE, VMC prays for judgment in an amount to be determined, those damages to be trebled, plus interest and any other relief the Court deems just and proper.

## COUNT VI – REQUEST FOR INJUNCTIVE RELIEF

65. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. If WFF is successful in terminating VMC, VMC will be irreparably harmed because its reputation in the industry will be damaged to the point of irreparable harm in that (i)

current VMC customers will no longer have confidence that VMC can fulfill its orders and (ii) other vendors will not distribute specialty product through VMC if VMC does not distribute WFF products.

67. The granting of an injunction will not inflict harm or injury on other interested parties because the injunction will maintain the status quo and will allow VMC to fulfill its orders and place additional orders.

68. The issuance of an injunction in this instance is in the public interest because the fulfillment of contractual obligations and a competitive marketplace will assist all parties and the public.

WHEREFORE, VMC prays for a temporary restraining order and preliminary and permanent injunction compelling WFF and its agents, employees and affiliates and all those acting in concert with any of them to continue selling specialty food products and other items available for purchase to VMC in a manner that does not violate the antitrust laws and that WFF will charge VMC for products pursuant to the same price structure as was used by WFF with VMC before February 25, 2005.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. Rule 38(b), VMC hereby demands a trial by jury on any issues triable of right by jury.

HUSCH & EPPENBERGER, LLC


By: /s/ John K. Power
    John K. Power, # 35312
    Michael S. Hargens, #51077
    1200 Main Street, Suite 1700
    Kansas City, MO 64105
    Telephone: (816) 421-4800
    Facsimile: (816) 421-0596

    ATTORNEYS FOR PLAINTIFF

# VERIFICATION

I, Ken Nemeth have read the above Verified Complaint, based on personal knowledge, state under oath that each of the facts and allegations asserted therein are true and correct to the best of my knowledge and belief.

_____
Ken Nemeth

State of Missouri            )
                             )ss
County of Jackson            )

The foregoing Verification was subscribed and sworn to before me this __16__ day of March, 2005

_____
Notary Public

My Commission Expires:

__11/20/05__

LADONNA RADDANT
NOTARY PUBLIC
NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES:
11/20/05